**UNITED STATES et al. v. BYRON SASH & DOOR CO.**

**No. 9862.**

Circuit Court of Appeals, Sixth Circuit.

June 18, 1945.

H. P. Zarky, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, and Paul S. McMahon, all of Washington, D. C., and Eli H. Brown, III, of Louisville, Ky., on the brief), for appellants.

David R. Castleman, of Louisville, Ky., for appellee.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

In 1929, the Byron Sash & Door Company, with outstanding capital stock of $140,000, had surplus and undivided profits of $145,090.93, from which, on December 11, 1929, it paid a cash dividend of $12,000. At the same time, it transferred $130,000 to the capital account, leaving a surplus of $3,090.93. Shortly thereafter, on April 2, 1930, it distributed a stock dividend of $130,000. In the subsequent seven years, it incurred operating losses of $69,945, which wiped out its surplus of $3,090.93 and resulted in impairment of its capital in the amount of $66,855.04, as of December 31, 1936. Its current earnings of 1937, in the amount of $18,766.91, were credited to capital, reducing impairment of capital to $48,092.13 as of December 31, 1937.

On its current earnings of 1937, the Col-

---

lector assessed undistributed profits surtax, which was paid. Under the law as it then stood (Revenue Act of 1936, Sections 14 and 26, 26 U.S.C.A. Int.Rev.Acts, pages 823, 835), the Byron Company admits, the tax was properly assessed and paid inasmuch as the taxpayer, under that law, was not entitled to a credit. This is conceded, although it is claimed by the company that it could not have distributed its earnings as dividends because of the prohibition of the Kentucky State law against payment of dividends during the existence of a deficit in accumulated earnings and profits; and it is clear that in 1937, the statutes provided no credit for corporations which were restricted by their state laws from distributing current profits to stockholders while impairment of their capital existed.

However, the Revenue Act of 1942 was thereafter enacted with an amendment (Section 501) to the 1936 Act, providing a retroactive credit for the relief of any corporation having a deficit in accumulated earnings and profits, if it was prohibited by the law of its state from paying dividends during the existence of such deficit; and it was further provided that the corporation should be allowed a refund of the tax it had theretofore paid, which would not have been paid if the new credit so given had been in effect when payment was made.

Claiming that it was prohibited by the law of Kentucky from paying dividends during the existence of the deficit on its books and contending that it came within the provisions of the law granting retroactive credit and refund, the Byron Company made claim for such refund under the 1942 Act, which was denied by the Commissioner. It then brought suit for the recovery of the amount in the district court and recovered a judgment from which the Collector appeals.

It is claimed by the Collector that the taxpayer was not a deficit corporation within the meaning of the statute in that it did not come within the provisions of the 1942 amendment [Section 26(c) (3) of the Revenue Act of 1936, amended by Section 501(a) (2) of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts], which provided a credit when dividends were restricted by law, in the following language:

"Deficit corporations. In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936."

The Commissioner's contention is based upon the ground that the taxpayer's deficit was the result of the $130,000 non-taxable stock dividend declared in 1929. It is argued that, since non-taxable stock dividends do not affect or diminish earnings and profits, they, therefore, cannot cause a deficit, and that there was in this case, therefore, no deficit in the taxpayer's accumulated earnings or profits.

In support of its argument, the Government points out that in Section 115(h) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 115(h), it is provided that the "distribution (whether before January 1, 1939, or on or after such date) to a distributee by or on behalf of a corporation of its stock or securities * * * shall not be considered a distribution of earnings or profits of any corporation—

"(1) if no gain to such distributee from the receipt of such stock or securities * * was recognized by law, or

"(2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under section 115(f) of the Revenue Act of 1934 or a corresponding provision of a prior Revenue Act."

Because the foregoing section provides that a stock dividend, like that in this case, shall not be considered a distribution of earnings or profits, it is urged that such a dividend cannot cause a deficit in earnings and profits, and that, consequently, a corporation whose deficit on its books results from a distribution of tax-free stock dividends may not, within the meaning of the statute, have the benefit of the credit granted by Section 501 of the Revenue Act of 1942.

Appellee does not claim that the distribution of the stock dividends was a distribution of the company's earnings and profits. On the contrary, it is maintained that there never was any such distribution, but rather that the earnings and profits were capitalized by the act of the corporation in transferring them to its capital account and were no longer available for distribution to

stockholders. It is submitted by appellee that by the action of the corporation, the earnings and profits became, as of the time of the declaration of the dividend, merged and coalesced with the capital, and became subject to all the limitations imposed by law upon corporate capital.

Section 115(h) deals with the taxable status of the stockholder who receives stock dividends, rather than with the liability of the corporation for tax, and to use this provision of the statute in order to ignore the deficit in the case before us, and to deny credit on undistributed profits surtax to this corporation, seems untenable. Moreover, it is based on a false premise—that the deficit was caused by the distribution of the stock dividend. Actually, the deficit was caused by seven continuous years of operating losses. True, if the stock dividends had not been distributed in 1930, there would have been no deficit in 1937. But even after the distribution of the dividend, there was yet remaining a surplus in 1930. It was the subsequent operating losses that resulted in the deficit in the critical years of 1936 and 1937.

According to the statute, the credit is allowed to a "corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year." What appears to us to have been a misconception on the part of the Collector is emphasized by a reference to the principal case on which the Government relies, Century Electric Co. v. Commissioner, 8 Cir., 144 F.2d 983. There the corporation had large accumulated earnings and profits at the close of the taxable years of 1935 and 1936, respectively. There was no claim that it had any deficit in earnings and profits for these years. In the year 1936, and again in 1937, it distributed non-taxable stock dividends. Before the Tax Court, as well as before the Circuit Court of Appeals, the corporation contended that by reason of the distribution of such stock dividends, it had become a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, within the meaning of Section 26(c) (3) of the Revenue Act of 1936, as amended by the Revenue Act of 1942, Section 501(a) (2), 26 U.S.C.A. Int.Rev. Acts; and that it was entitled to the credit of that section because it was prohibited from paying dividends by state law. The Court denied the credit on the ground that the non-taxable dividends distributed in 1936 and 1937 did not result in such a reduction in the earnings and profits for those years respectively, as to bring the company within the provisions of the statute as a deficit corporation. In other words, the Court held that where a corporation had a surplus, a deficit within the meaning of the statute under which a credit is allowed, could not be effected by the distribution of a non-taxable stock dividend. In the Century Electric case, there was, therefore, no deficit but rather a surplus as of the close of each of the two taxable years preceding the distribution of the dividends, and, accordingly, no credit was allowed by the provisions of the statute. See also the report of the same case, Century Electric Co. v. Commissioner, in 3 T. C. 297. The obvious difference between the Century case and the one before us is that in the former, the claimed deficit was effected by the distribution of the stock dividends, while in the instant case, it was effected by the preceding seven years of operating losses.

Section 501(a) (2) was enacted to provide a credit for a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year—if it was prohibited by a state law from paying dividends during the existence of such a deficit. The Byron Company had a deficit in accumulated earnings and profits as of the close of the preceding taxable year and continuing for seven years before the current earnings of 1937, which in effect were impounded for the repair of its capital, and upon which the Commissioner levied the undistributed profits surtax. The trial court held that appellee was authorized by law to capitalize its accumulated earnings and profits, "and thereby impress the assets so transferred with the same character as capital invested originally" and cited Eisner v. Macomber, 252 U.S. 189, 211, 40 S.Ct. 189, 194, 64 L.Ed. 521, 9 A.L.R. 1570:

"A 'stock dividend' shows that the company's accumulated profits have been capitalized, instead of distributed to the stockholders or retained as surplus available for distribution in money or in kind should opportunity offer. Far from being a realization of profits of the stockholder, it tends rather to postpone such realization, in that the fund represented by the new stock has been transferred from surplus to capital, and no longer is available for actual distribution."

We are in accord with the foregoing determination.

There having been a deficit in accumulated earnings and profits as of the close of 1936, the Byron Company was, under Kentucky law, prohibited from paying dividends out of the current earnings of 1937 during the existence of such deficit. Kentucky Revised Statutes 1942, Section 271.-220, formerly Kentucky Statutes, Section 548; Haggard v. Lexington Utilities Co., 260 Ky. 261, 84 S.W.2d 84; Gearhart v. Lee-Clay Products Co., 287 Ky. 316, 152 S.W.2d 1003.

In accordance with the foregoing, the judgment of the district court is affirmed.