## OWENSBORO WAGON CO.
### v.
## COMMISSIONER OF INTERNAL REVENUE.
### No. 11786.

United States Court of Appeals
Sixth Circuit.

Jan. 26, 1954.

James E. Fahey, Louisville, Ky. (William A. MacKenzie, Hays & Fahey, Louisville, Ky., on the brief), for appellant.

A. Chauncey Newlin, New York City, amicus curiae (White & Case, New York City, on the brief).

Robert P. Goldman, Harry Stickney, Cincinnati, Ohio, for Paxton & Seasongood, Cincinnati, Ohio, amici curiae.

S. Dee Hanson, Washington, D. C. (H. Brian Holland, Ellis N. Slack, Helen Goodner, Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

The appeal is from a decision of the Tax Court redetermining deficiency assessments by the Commissioner in the Excess Profits Tax of the taxpayer for the fiscal years ending November 30, 1945 and November 30, 1946. The controversy resulted from a determination by the Commissioner that the taxpayer was not entitled to include in its equity invested capital under § 718 of the Internal Revenue Code, 26 U.S.C.A. § 718, a sum representing distributions in its stock made prior to March 1, 1913. The facts are stipulated and the question is one of law involving interpretation of the provisions of the section.

The taxpayer is a Kentucky corporation, organized in 1883, and kept its books and filed its income and excess profits tax returns during the taxable year on an accrual basis. In 1898, 1900, 1901 and 1909 it issued to its common stockholders on a pro rata basis dividends in common stock of shares which had a par and actual value of $50.00. In

addition to the stock, a small amount of cash was distributed upon the same basis. At the time of each distribution, the earnings and profits of the taxpayer, after deductions for prior dividend payments, were in excess of the par value of the stock and cash paid by way of dividends. Promptly after each distribution, the amounts represented by the par value of its stock dividends were transferred on its books from its earning account to its capital stock account, by authority of its directors, in resolutions reciting that they were to be paid out of earnings. The total amount distributed by way of stock dividends was $204,775.-00.

On January 14, 1913, the taxpayer's books disclosed a credit balance of $100,-514.41 in its undivided profits account and no surplus. However, on November 30, 1941, there was a deficit in its undivided profits account of $190,639.36. On December 1, 1941, pursuant to authorization of its stockholders and directors, the taxpayer wrote down its capital stock account from $396,687.50 to $175,000.00 and of the amount by which the account was reduced credited $190,-639.36 to undivided profits and $31,048.-14 to capital surplus. In its excess profits returns for the taxable years the taxpayer included in its computation of equity invested capital the total of its stock dividends paid prior to March 1, 1913. The Commissioner in his determination of deficiencies held the amount not includible and restored it to petitioner's account for accumulated earnings and profits.

Section 718, as added by § 201 of the Second Revenue Act of 1940, c. 757, 54 Stat. 974, defines equity invested capital of a corporation as follows: "The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)."

(1) Money paid into the corporation for stock or as paid-in-surplus or as a contribution to capital.

(2) Property (other than money) paid in for such purposes.

(3) Distributions in stock (A) made prior to the taxable year to the extent considered distributions of earnings and profits, and (B) made during the taxable year to the extent considered distributions of earnings and profits other than earnings and profits of such taxable year.

(4) The accumulated earnings and profits as of the beginning of the taxable year involved.

Section 115(h) deals with the effect on earnings and profits of distributions of stock as follows:

The distribution (whether before January 1, 1939, or on or after such date) to a distributee by or on behalf of a corporation of its stock or securities, of stock or securities in another corporation, or of property or money, shall not be considered a distribution of earnings or profits of any corporation—

"(1) if no gain to such distributee from the receipt of such stock or securities, property or money, was recognized by law, or

"(2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under section 115(f) of the Revenue Act of 1934, 48 Stat. 712, or a corresponding provision of a prior Revenue Act."

The general purpose of these provisions is to arrive at an amount which has a direct relation to the capital employed in the business. The taxpayer's contention is that stock dividends are included under the provisions of (a) (3) (A) unless that subsection is controlled by subsection 115(h). It will be observed that subsection (a) (3) (A) includes distributions in stock "made prior to such taxable year to the extent to which they are considered distributions of earnings and profits." It will also be observed that § 115(h) deals with the effect of

distributions of stock on earnings and profits and provides that such distributions shall not be considered a distribution of earnings and profits, (1) if no gain to the distributee of the stock was recognized by law or (2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment or because exempt to him under § 115(f) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 703, or a corresponding provision of a prior Revenue Act. The basic contention of the taxpayer is that subsection (a) (3) (A) by its express terms or interpreted in the light of the regulations and legislative history permits the inclusion of stock dividends in equity invested capital and that while § 115(h) creates exceptions in respect to certain stock dividends it is applicable only to distributions made under the Revenue Acts after the adoption of the Sixteenth Amendment and has no application to stock dividends paid prior to March 1, 1913. The Tax Court found it unnecessary to consider this contention on the ground that rules for the application of subsections (a) and (b) are set forth in subsection (c), the first paragraph of which provides: "The term 'distribution' means a distribution by a corporation to its shareholders and the term 'distribution in stock' means a distribution by a corporation in its stock or rights to acquire its stock. To the extent that a distribution in stock is not considered a distribution of earnings and profits it shall not be considered a distribution. A distribution in stock shall not be regarded as money or property paid in for stock, or as paid-in surplus, or as a contribution to capital."

In addition, the Commissioner argues that pre-1913 dividends are includible in equity invested capital only under the provisions of subsection (a) (4) although there is nothing in the section which so declares and cases may readily be perceived wherein taxable stock dividends which reduce but do not exhaust accumulated earnings and profits may be included in invested capital under "(3)" and leave a surplus to be included under "(4)."

Of course, it is a truism that a statute must be construed so as to carry out the legislative purpose. The very statement of this principle by the Tax Court indicates that there is occasion for judicial construction of Section 718. Subsection (c) (1) is not of itself response to the contention that its provisions relate only to post-1913 distributions and not to those made prior to that critical date. In the present case, the stock dividends were declared out of pre-1913 earnings and distributed to shareholders prior to March 1, 1913. We are not here concerned with cases dealing with distributions out of earnings and profits which, though accumulated prior to 1913, were made and became income to shareholders subsequent to that date. The various provisions of the several Revenue Acts clearly indicate that the Congress drew a line betwen February 28, 1913 and March 1, 1913. It is true, of course, that in computing capital gains of shareholders or in providing a base from which to determine whether profits were normal or abnormal the pre-1913 capital structure must be considered. This is not to say, however, that a tax laid upon profits which may be abnormal and excessive in the light of pre-1913 experience may be imposed upon profits made before 1913. Perhaps, we need go no further than to consider the precise language of Section 115(h) (2) which speaks, in respect to taxability, in post-1913 phrasing. The intent of Congress would seem to be clear to condition stock distributions in respect to their effect on earnings and profits in the light of the constitutional change and the statutes enacted under its authority.

A more basic consideration than mere words supports this view. The present taxpayer had substantial accumulated earnings and profits prior to 1913. It distributed them to shareholders of common stock by the declaration of a com-

mon stock dividend and transferred an amount equal to the par value of such stock from its earnings and surplus account to its capital account. This was in accord with prevailing practice and sanctioned by Kentucky law, Hite's Devisees v. Hite's Ex'r, 93 Ky. 257, 20 S.W. 778, 19 L.R.A. 173, when made out of accumulated earnings. As was said by the Supreme Court in Foster v. United States, 303 U.S. 118, 121, 58 S.Ct. 424, 426, 82 L.Ed. 700: "Prior even to the 1924 act, this Court had determined that, for income tax purposes, earnings of a corporation accumulated prior to 1913 are to be considered capital." To the same effect are Southern Pac. Co. v. Lowe, 247 U.S. 330, 335, 38 S.Ct. 540, 62 L.Ed. 1142; Doyle v. Mitchell Bros. Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054, and Eisner v. Macomber, 252 U.S. 189, 219, 40 S.Ct. 189, 64 L.Ed. 521. See United States v. Byron Sash & Door Co., 6 Cir., 150 F.2d 44.

The excess profits tax is an income tax constitutionally invalid prior to the passage of the Sixteenth Amendment. No one can seriously argue that the profits of the present taxpayer prior to 1913, whether capitalized or not, could be taxed by the Federal Government without being apportioned as then constitutionally required. But the effect upon this taxpayer of the application of the excess profits provisions, as the Commissioner proposes, brings about that result. The taxpayer distributed its accumulated earnings and profits by means of a stock dividend paid out of such earnings and profits. Not otherwise could they have been declared under Kentucky law, Hite's Devisees v. Hite's Ex'r, supra. True, they were not taxable to the shareholders but their exemption owed nothing to the Sixteenth Amendment or any subsequent Federal taxing statute. By all legal and realistic concepts, the amounts represented by the stock dividends, when capitalized, and even if not capitalized, represented invested capital, with status equivalent to original capital, at the time they were distributed to shareholders.

By now excluding them from equity invested capital, a tax is laid indirectly upon pre-1913 earnings to the extent that such exclusion leads to a computation of abnormal income on invested capital. That this may not be done is, we think, clear if we apply the fixed principle that the Government may not do indirectly what was constitutionally impermissible directly; and the further principle that a statute may not be interpreted as constitutionally invalid if reasonably it may be so construed as to preserve its validity.

There are other criteria that the excess profits provisions of the Revenue Code were made applicable only to post-1913 distributions. Section 115(h) (2) sets up an alternative test as to their effect on earnings and profits. It provides that if the distribution was not subject to tax in the hands of the distributee because it did not constitute income to him then it shall not be considered a distribution of earnings and profits. The contrary must also be true so that if the distribution was subject to the tax on the distributees it could be considered a distribution of earnings and profits. But the distribution here considered was in all cases free of Federal tax because made before any such tax could be imposed. The test, therefore, could be applied only to post-1913 distributions and not to those made prior thereto. The inference is, therefore, inescapable that it was the intent of the Congress to make the provision applicable only to a situation where a distribution could be considered in respect to whether it was taxable or free from tax in the hands of the distributee and not to those which were exclusively beyond the power of the Government to tax.

Moreover, Section 729 provides that all provisions of law applicable in respect to the income tax are applicable to excess profits taxes. Therefore, Section 115(l) dealing with the meaning of earnings was necessarily extended to Section 718 (a) (4) of the excess profits tax, Bangor and Aroostook Railroad Company, 16 T.

C. 578, and that gives meaning to Regulations 3, 112, § 35.718–3:

> "A distribution made prior to the taxable year by a corporation in its stock, * * * to the extent to which it constitutes a distribution of earnings and profits of the corporation, constitutes an item of invested capital. * * *"

Section 718 was first enacted into law by Section 201 of the Second Revenue Act of 1940, 54 Stat. 974. In the House Ways and Means Committee Report on the bill, Report 2894, 76th Congress, Third Session p. 24, it was said: "Taxable stock dividends are included in invested capital because they represent, in effect, a reinvestment of earnings in the business. Conversely, if a stock dividend was not subject to tax in the hands of the distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or was not taxable to him under the applicable revenue law, it is not deemed to reduce the earnings and profits account and is therefore already reflected in the accumulated earnings and profits." Thus, it will be seen that the provisions are designed to prevent a double credit to the taxpayer for capital, once as reflected by the stock dividend and the other by accumulated earnings and profits.

It has been said that when Congress in the 1916 Act Sec. 2(a), 39 Stat. 757, defined "dividends" as " * * * any distribution * * * by a corporation * * * out of its earnings or profits accrued since March first, nineteen hundred and thirteen, it was beset by constitutional doubts as to whether the Congress could validly tax distribution from earnings accumulated prior to the enactment of the Sixteenth Amendment, Albrecht "Dividends" and "Earnings or Profits," 7 Tax Law Review 157, 160. This doubt was set at rest in Lynch v. Hornby, 247 U.S. 339, 38 S.Ct. 543, 62 L.Ed. 1149, in respect to distributions made after 1913 even though they were from earnings and profits accumulated prior thereto. Capital distributions which did not constitute income to the distributee were, however, exempt from tax even though from corporate earnings accumulated prior to 1913. They were considered capital, Southern Pac. Co. v. Lowe, 247 U.S. 330–335, 38 S.Ct. 540, 62 L.Ed. 1142, and Foster v. United States, supra. Compare Lynch v. Turrish, 247 U.S. 221, 38 S.Ct. 537, 62 L.Ed. 1087, with Lynch v. Hornby, supra.

Throughout the subdivisions of Section 115 reference is made to earnings and profits accumulated after February 28, 1913. In interpreting such reference in regard to Section 115(g) the Court of Appeals for the Eighth Circuit said, in Vesper Co. v. Commissioner, 131 F.2d 200, 205:

> " * * * Probably the only effect that can reasonably be given to the reference to earnings and profits accumulated after February 28, 1913, in section 115(g) is to reemphasize—though perhaps somewhat redundantly—that distributions of earnings and profits accumulated prior to the date mentioned are excluded from the operation of the statute."

We are of the view that pre-1913 earnings have long been considered capital, that the Congress could not and if it could did not intend to change their status for the purpose of levying an excess profits tax where the earnings were accumulated, were capitalized and distribution occurred prior to the effective date of the Federal income tax law. The stock dividends here involved should have been allowed as a credit for invested capital. They were distributions of earnings and profits accumulated prior to 1913 and in any event came within § 718(a) (3) (A). They should have been included in the taxpayer's equity invested capital.

Reversed and remanded to the Tax Court for further proceedings in conformity herewith.